NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0589n.06

No. 12-3983

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BRENDA PEARCE, et. al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE SOUTHERN** |
| FAURECIA EXHAUST SYSTEMS, INC., | ) | **DISTRICT OF OHIO** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**

*Jun 19, 2013*

DEBORAH S. HUNT, Clerk

BEFORE:  MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

**I.  Introduction**

This case involves allegations by seventy-five employees ("Plaintiffs") that employer Faurecia Exhaust Systems, Inc. ("Defendant") terminated their employment in violation of the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* ("WARN Act"). Plaintiffs worked at a manufacturing plant owned by Defendant (the "Troy East Plant").  Plaintiffs' complaint alleges that Defendant violated the WARN Act by failing to give a sixty-day notice of plant closing or mass layoff.  The district court determined that there was no question of fact that Defendant was entitled to invoke the "unforeseeable business circumstances" exception to the sixty-day notice requirement, and granted summary judgment in favor of Defendant.  Plaintiffs appeal. We AFFIRM.

## II. Background

### A.  Facts

In 2009, Defendant operated an exhaust system plant in Troy, Ohio, located at 1255 Archer Drive, commonly referred to as "Troy East."  Defendant is a "just-in-time" manufacturer, which means that it produces product for its customers on demand, when the product is needed by the customer.  In 2008 and early 2009, the Troy East plant supplied parts to Chrysler and General Motors, as well as to some of Defendant's other facilities.

On April 30, 2009, Chrysler filed petitions in the United States Bankruptcy Court for the Southern District of New York, seeking relief under Chapter 11 of the United States Bankruptcy Code.  The Chrysler bankruptcy was initiated after a group of creditors did not agree to proposals to reduce Chrysler's secured debt.  With the April 30th announcement that Chrysler was filing for Chapter 11 bankruptcy, Chrysler also announced that it would close and sell multiple plants. Defendant was notified the Chrysler plants supplied by Defendant would be idle during the pendency of the Chrysler bankruptcy.  The Troy East Plant had no orders to fulfill from Chrysler until Chrysler exited bankruptcy.  Furthermore, the date that Chrysler would exit bankruptcy was unknown at the time of filing.

On May 1, 2009, Defendant verbally instructed certain employees not to report for work unless otherwise told.  Consequently, Defendant implemented a full closing of the production lines. Defendant then issued a notice to the State of Ohio and the local government taxing entity that the company was closing certain Troy East assembly operations.

On or about May 7, 2009, Defendant mailed a letter to Plaintiffs, announcing the permanent layoff of Troy East employees scheduled to occur the following day, May 8, 2009.  On Friday, May

8, 2009, the employees of the Troy East Plant received the letter, which informed them that the plant was to be shut down immediately, with the exception of a few production lines that did not supply parts to Chrysler. Plaintiffs were informed that they were being laid off immediately and indefinitely. In the letter, Defendant also wrote:

> We are giving less than sixty (60) days' notice of the mass layoff/shutdown due to the unforeseen and unprecedented announcement that Chrysler is closing its assembly plants which accompanied Chrysler's announcement of its bankruptcy filing, the unforeseen and unprecedented decline in our exhaust assembly operating unit business, and the rapidly growing uncertainty regarding our customer base; circumstances which are sudden, dramatic, unexpected, and outside of [Defendant's] control.

## B.    Procedural History

Plaintiffs filed this claim in the United States District Court for the Southern District of Ohio on July 16, 2010, and amended their complaint on September 22, 2010. The amended complaint asserted a claim under the WARN Act for failure to give a sixty-day notice of a mass layoff. Additionally, the amended complaint asserted state law claims for promissory estoppel, breach of contract, and fraud.

On February 21, 2012, Defendant filed a motion for summary judgment, claiming that it was entitled to invoke the "unforeseeable business circumstances" exception to the sixty-day notice requirement. 29 U.S.C. § 2102(b)(2)(A). The district court granted Defendant's motion for summary judgment with respect to the WARN Act claim, and dismissed Plaintiffs' state law claims, declining to exercise supplemental jurisdiction. Plaintiffs now appeal the district court's grant of summary judgment on the WARN Act claim.

3

### III. Analysis

**A.** **Standard of Review**

Summary judgment is to be reviewed *de novo. Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bobo v. UPS,* 665 F.3d 741, 748 (6th Cir. 2012). In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party must "go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp*, 477 U.S. at 324.

**B.** **The WARN Act**

The WARN Act requires an "employer" to provide "affected employees" with sixty-days' notice prior to "plant closings" or "mass layoffs." 29 U.S.C. § 2102(a). In the instant case, there is no dispute that: (A) Defendant is an "employer" within the meaning of 29 U.S.C. § 2101(a)(1); (B) Plaintiffs are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5); (C) a "mass

layoff" occurred as defined by 29 U.S.C. § 2101(a)(2) and 29 U.S.C. § (a)(3); and (D) Defendant failed to give sixty-days' notice as required by 29 U.S.C. § 2102(a).

Instead, the issue to be decided is whether Defendant is entitled to invoke the "unforeseeable business circumstances" exception to the sixty-days' notice, which provides that:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b)(2)(A). Courts have construed this exception narrowly. *See, e.g., Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640-41 (4th Cir. 1997) ("Because the WARN Act is remedial legislation, its exceptions are to be construed narrowly.") The employer relying on the exception bears the burden of persuasion. *Id.*

In order to qualify for the exception contained in 29 U.S.C. § 2102(b)(2)(A), Defendant must prove two elements: (A) that the circumstances complained of were unforeseeable; and (B) that the circumstances complained of actually caused the mass layoff or plant shutdown. In the instant case, Plaintiffs challenge only the "unforeseeability" element.

Unforeseeability is evaluated on a case-by-case basis. The Department of Labor "refuses to classify certain types of circumstances as *per se* unforeseeable and suggests that courts examine each cause on its own merits to determine whether the employer in the exercise of 'commercially reasonable business judgment' could have foreseen the particular circumstances that caused the closing" sixty days prior to the mass layoff. *Watson v. Mich. Indus. Holdings, Inc.*, 311 F.3d 760, 764 (6th Cir. 2002) (citations omitted).

The Department of Labor has specifically provided that:

The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services.

20 C.F.R. § 639.9(b)(2). A "sudden, dramatic, and unexpected action or condition outside the employer's control" is an indicator of a business circumstance not reasonably foreseeable. *Id.* at § 639.9(b)(1). The unforeseeable business circumstance exception includes situations where the employer unexpectedly loses a major client. *Watson*, 311 F.3d at 766.

Plaintiffs claim that there exists a genuine issue of material fact as to the unforeseeability of Chrysler's bankruptcy because (1) Defendant had actual knowledge that the Chrysler bankruptcy would occur before it was announced; (2) a "similarly situated employer" would have foreseen the Chrysler bankruptcy before it was announced; and (3) at the very least, conditional notice should have been given.

### 1. Actual Knowledge

Plaintiffs' only evidence of actual knowledge is from the testimony of Plaintiffs Akhter and Pearce. According to his deposition, Akhter went to Defendant's human resources office to pick up a check stub several weeks prior to Chrysler's bankruptcy. There, he saw a stack of letters that looked "similar" to those sent out on May 7, 2009. *Id.* Akhter picked up the envelope, thinking it was his check stub, but was told to put it back on the stack because it was "something else."

Akhter concedes that he neither opened nor read the letters, and furthermore, that he does not know what the envelopes contained. While Plaintiffs could have used discovery to learn who drafted the letters and deposed Defendants and their witnesses to investigate the contents of the letters, they

6

failed to do so. Without any more evidence beyond Akhter seeing "similar looking" letters, this court cannot find that Plaintiffs demonstrated a genuine issue of material fact here. *See Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 628-29 (6th Cir. 2008) ("It is not sufficient for the party opposing summary judgment to present a 'mere scintilla' of evidence; the evidence must be such that a reasonable jury could find in her favor."); *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and, are not enough to defeat a well-supported motion for summary judgment."). Plaintiffs' argument here is no more than speculation.

Pearce testified in her deposition that she heard that there were "rumors" among Defendant's employees prior to the Chrysler bankruptcy, and that employees were "nervous" about being laid off. However, speculative rumors on their own are insufficient to show a genuine issue of material fact to survive summary judgment. If a single, unsubstantiated, alleged rumor can create a genuine issue of material fact, the "mere scintilla" threshold would be vitiated. *See Staunch*, 511 F.3d at 629. Plaintiffs have failed to show any genuine issue of material fact as to actual knowledge.

### 2. Similarly Situated Employers

Next, Plaintiffs challenge the district court's refusal to give judicial notice that a reasonable and similarly situated employer would have been able to predict the Chrysler bankruptcy. Plaintiffs correctly note that the test for an unforeseeable business circumstance focuses on whether the employer exercised "such commercially reasonable business judgment as would a similarly situated employer." 20 C.F.R. § 639.9(b)(2).

Plaintiffs' primary argument is that Chrysler's impending bankruptcy was "in fact, common knowledge in early 2009," because the economic recession in 2008 "was resulting in decreased sales

for automobiles, and that these decreased sales would likely result in several, if not all, of the 'big three' American automakers filing bankruptcy." Courts take judicial notice of matters of common knowledge. *Brown v. Piper*, 91 U.S. 37, 38 (1875). Here, however, there is no "reliable source of verification" for this fact, as required by a court taking judicial notice. 4 J. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 201.12 (2d ed. 1997). Judicial notice of an adjudicative fact is appropriate only where the fact is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The only evidence Plaintiffs offer is their own depositions, stating that the bankruptcy was common knowledge, but Plaintiffs fail to present any source typically used for judicial notice such as a dictionary, public record, or even a newspaper article.[1]

Plaintiffs only cite *Carpenters Dist. Council v. Dillard Dep't Stores*, 15 F.3d 1275, 1282 (5th Cir. 1994), which holds that a "business development that had been expected for some time, even when the exact timing is unknown, is not unforeseeable." However, in *Carpenters*, the defendant knew and endorsed a proposed merger. *Id.* Here, there is no proof that Defendant had any advance knowledge of the bankruptcy, and Defendant certainly was not involved in its filing. This case is clearly distinguishable.

---

[1]Ironically, Plaintiffs' argument here is essentially that Defendant should have known about the bankruptcy because Plaintiffs knew about the bankruptcy. This means that Plaintiffs' alleged injury is that Defendant failed to notify them of something that they already were aware of. Unfortunately for Plaintiffs, they have failed to present any evidence that Defendant knew anything more than they did about Chrysler's bankruptcy plans.

### 3. Conditional Notice

Lastly, Plaintiffs argue that even if Defendant was unsure whether the Chrysler bankruptcy was a certainty, it should have issued a conditional notice to its employees at the Troy East Plant, explaining that if Chrysler were to file bankruptcy and cease production, Defendant would also be forced to stop production, which would lead to a mass layoff or shutdown. Plaintiffs argue that by failing to issue this conditional notice, Defendant did not "even try to comply with the WARN Act." However, Plaintiffs misinterpret the relevant regulation, which provides:

> Notice *may* be given conditional upon the occurrence or nonoccurrence of an event, such as the renewal of a major contract, *only when the event is definite* and the consequences of its occurrence or nonoccurrence will necessarily, in the normal course of business, lead to a covered plant closing or mass layoff less than 60 days after the event.

20 C.F.R. § 639.7 (emphasis added). The regulation clearly permits conditional notice, but does not require it. *See Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1063, n.9 (8th Cir. 1996) (holding that "a failure to circulate conditional notice cannot, in itself, justify the imposition of WARN liability").

### IV. Conclusion

For the foregoing reasons, there is no genuine issue as to any material fact. Defendant is entitled to judgment as a matter of law. Accordingly, the judgment of the district court is AFFIRMED.